# Exhibit 1

# EXHIBIT 2

# NHDOE July 11, 2025 Letter

CHAPTER 141
HB 2-FN-A-LOCAL - FINAL VERSION

10Apr2025... 1488h
10Apr2025... 1529h
10Apr2025... 1559h
10Apr2025... 1526h
10Apr2025... 1560h
10Apr2025... 1499h
10Apr2025... 1523h
10Apr2025... 1569h
10Apr2025... 1566h
10Apr2025... 1513h
06/05/2025   2637s
06/05/2025   2670s
06/05/2025   2697s
06/05/2025   2705s
26Jun2025... 2871CofC
26Jun2025... 2900EBA

2025 SESSION

25-1170
08/05

HOUSE BILL           *2-FN-A-LOCAL*

AN ACT            relative to state fees, funds, revenues, and expenditures.

SPONSORS:         Rep. Weyler, Rock. 14; Rep. D. McGuire, Merr. 14; Rep. Erf, Hills. 28; Rep. Edwards, Rock. 31

COMMITTEE:        Finance

───────────────────────────────────────────────

AMENDED ANALYSIS

This bill:

   1. Adds new definitions to the endangered species conservation act.

   2. Requires the department of environmental services to adopt rules and review procedures such that actions of state agencies do not jeopardize the existence or habitats of species protected under the endangered species conservation act.

   3. Establishes an environmental scientist position within the department of environmental services to ensure that state agencies do not jeopardize the existence or habitats of species protected under the endangered species conservation act.

   4. Requires that rules established by the executive director of the fish and game department establish an administrative fee that the executive director may collect from payments made to the threatened and endangered species compensatory mitigation fund.

   5. Requires the department of environmental services to adopt rules regarding when mitigation payments to the threatened and endangered species compensatory mitigation fund must be made.

   6. Modifies the definition of "environmental review" as it relates to native plant protection.

166.  Delays the June 2027 capitation payments to Medicaid managed care organizations until fiscal year 2028 and directs the department of health and human services to use the resulting savings to reduce department appropriations by a specified amount for the fiscal year ending June 30, 2027.

167.  Requires the governor to increase state general fund revenues or decrease state general fund appropriations through the biennium ending June 30, 2027.

168.  Makes the administrator of the recreational and socialization services fund and persons or entities with historic horse racing operations licenses charitable organizations.

169.  Prohibits all public entities from implementing, promoting, or otherwise engaging in any diversity, equity, and inclusion DEI-related initiatives, programs, training, or policies; requires each agency to report such contracts to the department of administrative services, which shall compile a consolidated report for submission to the governor, speaker of the house of representatives, and senate president; and provides for the amendment (i.e., removing DEI-related provisions) of non-compliant contracts.

170.  Prohibits all public schools from implementing, promoting, or otherwise engaging in any DEI-related initiatives, programs, training, or policies and provides processes for the review and termination or amendment of noncompliant contracts and provides for funding halts in the event of a violation.

171. Creates the position of chief privacy officer within the department of information technology.

172.  Applies the proceeds of the sale of the former Laconia state school campus property to any subsequent purchase of land, building, or other improvements at 1 Granite Place Concord.

173.  Makes the payment and procurement card fund a lapsing fund when the balance reaches a specified amount, and makes a one-time transfer from the payment and procurement card fund to the general fund.

174.  Raises various filing fees for the board of tax and land appeals and allows certain matters before the board of tax and land appeals to be removed to superior court.

175.  Allows any state agency subject to a state general fund appropriation reductions to request, with prior approval of the fiscal committee of the general court, that the governor and council authorize additional funding.

176. Removes the reference to mentally incapacitated for purposes of disability retirement benefits for group II.

177. Designates Coos County as a distressed place-based economy and requires commissioners of state agencies to consult with county commissioners before making regulatory decisions that would affect Coos County.

178. Delays reduction-in-force notices for certain executive branch employees, establishes funding reserves for final payments, and ensures unused funds revert to the state's revenue stabilization reserve.

179. Transfers oversight of the housing appeals board to the board of tax and land appeals, modifies board membership, lowers the number of members from 3 to 2, and introduces a procedure for tie votes where a temporary third member is selected from the board of tax and land appeals.

180.  Modifies the terms of the members of the board of tax and land appeals and allows for the board to use a member of the housing appeals board in certain circumstances.

181.  Increases the fees and modifies to whom the fees are owed for certain work performed by the office of the chief medical examiner.

CHAPTER 141
HB 2-FN-A-LOCAL - FINAL VERSION

25-1170
08/05

STATE OF NEW HAMPSHIRE

*In the Year of Our Lord Two Thousand Twenty Five*

AN ACT relative to state fees, funds, revenues, and expenditures.

*Be it Enacted by the Senate and House of Representatives in General Court convened:*

1  141:1  New Paragraphs; Fish and Game; Endangered Species Conservation Act; Definitions.  Amend
2  RSA 212-A:2 by inserting after paragraph V the following new paragraphs:
3       VI.  "Commissioner" means the commissioner of the department of environmental services.
4       VII.  "Department" means the department of environmental services.
5  141:2  Fish and Game; Endangered Species Conservation Act; Conservation Program.  Amend RSA
6  212-A:9 to read as follows:
7  212-A:9  Conservation Programs.
8       I.  The executive director shall establish such programs, including acquisition of land or aquatic
9  habitat or interests therein, as are deemed necessary for the conservation of endangered or threatened
10 species.  The executive director shall utilize all authority vested in the fish and game department to carry
11 out the purposes of this section.
12      II.  In carrying out programs authorized by this section the executive director shall consult with
13 other states having a common interest in particular threatened or endangered species of wildlife and may
14 enter into agreements with federal agencies, other states, political subdivisions of this state or private
15 persons with respect to programs designed to conserve endangered or threatened species of wildlife
16 including, where appropriate, agreements for administration and management if any are established
17 under this section or utilized for conservation of endangered or threatened species of wildlife.
18      III.  All other state departments and agencies, to the extent possible, consistent with their
19 authorities and responsibilities, shall [assist and cooperate with the executive director in the furtherance of
20 the purposes of this chapter for the conservation of endangered or threatened species. They shall] take
21 such action as is reasonable and prudent to [insure] *ensure* that actions authorized, funded, or carried out
22 by them do not appreciably jeopardize the continued existence of such species or result in the destruction
23 or modification of habitat of such species which is determined by the executive director to be critical, by
24 requiring that all such action is designed to avoid [and], minimize*, and mitigate* harm to such species and
25 habitat designated as critical.  *Other departments and agencies may consult with the executive director or*
26 *hire their own internal wildlife biologists to carry out the requirements of this paragraph.  The executive*
27 *director shall assist other departments and agencies in carrying out this paragraph.*  For the purpose of
28 this statute, "appreciably jeopardize the continued existence of such species" shall be defined in rules
29 adopted by the executive director pursuant to RSA 541-A.  The provisions of RSA 212-A or any rule
30 promulgated under this chapter shall not be applicable to a state department or agency when that state
31 department or agency, in the process of undertaking an action, is required by federal law or regulation to
32 address the environmental impact on wildlife or wildlife habitat, of that action.

1  agency that establishes such an administrative fee may be exempted from an assessment, lapse, or other
2  appropriate utilization as contained in paragraph I.
3      III.  The governor may reduce the value of the increase in revenues or decrease in appropriations
4  in paragraph I by the anticipated amount to be transferred to the general fund as a result of administrative
5  fees established in paragraph II.
6      141:321  New Subdivision; Prohibition on Diversity, Equity, and Inclusion.  Amend RSA 21-I by
7  inserting after section 111 the following new subdivision:
8                          Prohibition on Diversity, Equity, and Inclusion
9      21-I:112  Definitions.  In this subdivision:
10         I.  "Agency" means any department, office, commission, board, subdivision, or other unit, however
11  designated, of the executive branch of state government.
12         II.  "Diversity, equity, and inclusion" or "DEI" shall mean any program, policy, training, or initiative
13  that classifies individuals based on a characteristic identified under RSA 354-A:1 for the purpose of
14  achieving demographic outcomes, rather than treating individuals equally under the law.
15         III.  "Political subdivision" means any village district, school district, town, city, county, or
16  unincorporated place in the state.
17      21-I:113  Prohibition on DEI Initiatives.  No public entity shall implement, promote, or otherwise
18  engage in any DEI-related initiatives, programs, training, or policies.  No state funds shall be expended for
19  DEI-related activities, including but not limited to implicit bias training, DEI assessments, critical race
20  theory, or race-based hiring, promotion, or contracting preferences.
21      21-I:114  Prohibition on DEI-Related Contract Provisions.  No agencies or political subdivisions shall
22  enter into or renew any contract that includes DEI-related provisions, including requirements for
23  contractors to implement DEI programs, conduct DEI training, or comply with DEI-related reporting
24  obligations.
25      21-I:115  Review of Agency Contracts for DEI-Related Contract Provisions.  Each state agency shall,
26  no later than October 1, 2025, submit to the department of administrative services a report identifying all
27  contracts under its control that include DEI-related provisions.  The report shall include descriptions of
28  each contract, the specific DEI-related provisions contained therein, and the total financial obligation
29  associated with each contract.  The department shall combine and submit a consolidated report to the
30  governor, speaker of the house of representatives, and the president of the senate.
31      21-I:116  Review of Political Subdivision DEI-Related Contract Provisions.  The department of justice
32  shall establish a process by which all political subdivisions review their existing contracts for the presence
33  of DEI-related provisions.
34      141:322  New Subdivision; Prohibition on Diversity, Equity, and Inclusion in Public Schools.  Amend
35  RSA 186 by inserting after section 70 the following new subdivision:
36                      Prohibition on Diversity, Equity, and Inclusion in Public Schools
37      186:71  Definitions.  In this subdivision:

I. "Diversity, equity, and inclusion" or "DEI" shall mean any program, policy, training, or initiative that classifies individuals based on a characteristic identified under RSA 354-A:1 for the purpose of achieving demographic outcomes, rather than treating individuals equally under the law.

II. "Public school" means any school, academic institution, or institution of higher education in this state supported by public funds.

186:72  Prohibition on DEI Initiatives.  No public school shall implement, promote, or otherwise engage in any DEI-related initiatives, programs, training, or policies.  No state funds shall be expended to public schools for DEI-related activities, including but not limited to implicit bias training, DEI assessments, critical race theory, or race-based hiring, promotion, or contracting preferences.  This prohibition shall extend to any public school as defined in RSA 186:71, II.

186:73  Prohibition on DEI-Related Contract Provisions.  No public school shall enter into, renew, or amend any contract that includes DEI-related provisions, including requirements for contractors to implement DEI programs, conduct DEI training, or comply with DEI-related reporting obligations.

186:74  Review of Public School Contracts for DEI-Related Contract Provisions.  No later than October 1, 2025, the commissioner of the department of education shall submit a single report to the senate education, senate education finance, house education funding, and house education policy and administration committees of the general court identifying all existing contracts containing DEI-related provisions in public schools.  The report shall include contract descriptions, the specific DEI-related provisions, and the total financial obligation associated with each contract.

186:75  Review of Public School DEI-Related Contract Provisions.

I. The commissioner of the department of education shall establish a process by which all public schools shall conduct a review of existing contracts for the presence of DEI-related provisions.

II. No later than September 30, 2025, each public school shall submit a signed and certified report to the commissioner of the department of education identifying any contract containing DEI-related provisions.  The report shall include contract descriptions, the specific DEI-related provisions, and the total financial obligation associated with each contract.

186:76  Final Compliance Report.  The commissioner of the department of education shall submit a final compliance report to the governor, executive council, and the senate education, senate education finance, house education funding, and house education policy and administration committees of the general court by April 1, 2026, detailing the progress of public schools in eliminating DEI-related provisions from contracts.

187:77  Interpretation and Compliance.

I. Should a public school fail to abide by any section of this subdivision, either knowingly or unknowingly, the commissioner of the department of education shall immediately halt all sources of public funding to that public school, until such time as the school comes into compliance with all sections of this subdivision.

II. The commissioner of the department of education shall notify the state treasurer if a public school is not in compliance with this subdivision, at which time the treasurer shall halt all forms of public

1  funding to the school until the commissioner has certified the school come into compliance with this
2  subdivision.

3  141:323  New Paragraph; The State and Its Government; Department of Information Technology;
4  Commissioner; Deputy Commissioner; Directors; Compensation.  Amend RSA 21-R:3 by inserting after
5  paragraph III the following new paragraph:

6        IV.  The unclassified position of chief privacy officer is hereby established in the department of
7  information technology.  A person shall be qualified for the position by reason of education and
8  experience, be appointed by the commissioner of the department of information technology, and serve at
9  the pleasure of the commissioner.  The salary of chief privacy officer shall be determined after
10  assessment and review of the appropriate letter grade allocation in RSA 94:1-a, for positions which shall
11  be conducted pursuant to RSA 94:1-d and RSA 14:14-c.

12  141:324  Appropriation; One Granite Place; Department of Administrative Services.  The sum of
13  $15,600,000 is hereby appropriated to the department of administrative services to purchase the property
14  known as One Granite Place and to pay for initial capital improvements to the property.  Such
15  appropriation shall be nonlapsing.  To provide funds for the appropriation made in this section, the state
16  treasurer is herby authorized to borrow on the credit of the state not exceeding the sum of $15,600,000
17  and for said purpose may issue bonds and notes in the name of and on behalf of the state of New
18  Hampshire in accordance with RSA 6-A.  The payment of principal and interest on the bonds and notes
19  under this paragraph shall be a direct charge against the rents paid by state agencies including the office
20  of professional licensure and certification, branches, or other entities occupying the space.

21  141:325  State Credit Card Contracts; Payment and Procurement Card Fund.  Amend RSA 9-D:3, I to
22  read as follows:

23        I.  There is hereby established in the office of the state treasurer the payment and procurement
24  card fund, which shall be a revolving fund administered by the department of administrative services.
25  [The fund shall be nonlapsing and continually appropriated to the department of administrative services.]
26  The department of administrative services may make expenditures of up to $100,000 in anticipation of
27  revenue which may be received by this fund.

28  141:326  State Credit Card Contracts; Payment and Procurement Card Fund.  Amend RSA 9-D:3, V
29  to read as follows:

30        V.  At the end of each [fiscal year, the state treasurer shall credit the payment and procurement
31  card fund with interest and any other income earned] *biennium, any funds remaining in excess of $25,000*
32  *after expenses paid in accordance with paragraph III shall lapse to the general fund*.

33  141:327   Directive; Department of Administrative Services; Transfer from the Payment and
34  Procurement Card Fund to the General Fund.  Notwithstanding any other law to the contrary, the sum of
35  $1,253,623 shall be transferred from the payment and procurement card fund, established under RSA 9-
36  D:3, to the general fund on July 1, 2025.

37  141:328  Contingent Appropriation.  In the event combined state general and education trust fund
38  revenues for the fiscal year ending June 30, 2026, as reported in the audited annual comprehensive
39  financial report pursuant to RSA 21-I:8, II(a), exceed the combined plan, and the actual statewide general

1   I.  All parents or legal guardians shall have their children, who are residing in this state, immunized against [certain diseases.  These diseases shall include, but not be limited to,] diphtheria, mumps, pertussis, poliomyelitis, rubella, rubeola, [and] tetanus, *varicella, Hepatitis B, and Haemophilus influenzae type B (Hib)*.  [The commissioner shall adopt rules under RSA 541-A relative to other diseases which require immunization.]

141:457  Repeal.  RSA 141-C:6, XIII, relative to rulemaking for other communicable diseases under RSA 141-C:20-a, I.

141:458  Department of Health and Human Services; Coos County Family Health Services; Appropriation.  In addition to any other sums appropriated, the sum of $75,000 for the fiscal year ending June 30, 2026, and the sum of $75,000 for the fiscal year ending June 30, 2027, are appropriated to the department of health and human services for the purpose of funding services provided by Coos County Family Health Services.  The governor is authorized to draw a warrant for said sums from any money in the treasury not otherwise appropriated.

141:459  Residential Care and Health Facility Licensing; License or Registration Required.  Amend RSA 151:4-a, II(a) to read as follows:

II.(a)  Any person or entity proposing to establish [an ambulatory surgical center, emergency medical care center,] *a* hospital[, birthing center, drop-in or walk-in care center, dialysis center, or special health care service] within a radius of 15 miles of the primary physical location of a New Hampshire hospital certified as a critical access hospital pursuant to 42 C.F.R 485.610(b) and (c), shall give written notice of the intent to establish a health care facility within a 15 mile radius with a description of the facility [or special health care service] to the chief executive officer of the hospital by certified mail.

141:460  Effective Date.  Section 459 of this act shall take effect 60 days after its passage.

141:461  Effective Date.  Unless otherwise specified, the remainder of this act shall take effect July 1, 2025.

Approved: June 27, 2025
Effective Date:
Unless otherwise specified, the remainder of this act shall take effect July 1, 2025